# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| MARY M. CHORBA,<br>    Plaintiff,<br><br>    v.<br><br>NANCY A. BERRYHILL,<br>Deputy Commissioner for Operations,<br>performing the duties and functions not<br>reserved to the Commissioner of Social<br>Security,<br>    Defendant. | CAUSE NO.: 2:17-CV-149-JEM |

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Mary Chorba on April 4, 2017, and an Opening Brief [DE 12], filed by Plaintiff on August 4, 2017. Plaintiff requests that the decision of the Administrative Law Judge be reversed and remanded for further proceedings. On September 15, 2017, the Commissioner filed a response, and on October 14, 2017, Plaintiff filed a reply. For the following reasons, the Court grants Plaintiff's request for remand.

**I.    Background**

On or about April 18, 2013, Plaintiff filed an application for disability insurance benefits alleging that she was disabled starting on November 30, 2011. Plaintiff's application was denied initially and upon reconsideration. On May 20, 2015, Administrative Law Judge ("ALJ") Dennis R. Kramer held a hearing at which Plaintiff, represented by an attorney, appeared and testified. Plaintiff's husband, two medical experts, and a vocational expert (the "VE") also testified. On June 22, 2015, the ALJ issued a decision finding that Plaintiff was not disabled within her insured period, and therefore was ineligible for benefits.

The ALJ made the following findings under the required five-step analysis:

1.  The claimant last met the insured status requirements of the Social Security Act (the "Act") on March 31, 2012.

2.  The claimant did not engage in substantial gainful activity from her alleged onset date of November 11, 2011, through her date last insured of March 31, 2012.

3.  As of her date last insured, the claimant had the severe impairments of mild dementia, probable Huntington's disease (which was later confirmed by genetic testing), asthma, major depressive disorder, and anxiety.

4.  The claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one the listed impairments in 20 C.F.R. 404, Subpart P, Appendix 1.

5.  The claimant had the residual functional capacity to lift and carry up to 20 pounds occasionally and 10 pounds frequently; to sit, stand and/or walk for 2 hours at a time for a total of up to 6 hours each in an 8-hour workday; to frequently reach, handle, finger, feel, push, and pull bilaterally; to frequently climb ramps and stairs (but never ladders or scaffolds), balance, stoop, kneel, crouch, and crawl; and to occasionally operate a motor vehicle. She could tolerate an environment with loud noise; frequent exposure to vibrations, occasional exposure to humidity, wetness, dust, odors, fumes, and pulmonary irritants, but no exposure to unprotected heights and moving mechanical parts. She was limited to simple, routine and repetitive tasks; should could understand, remember, and carry out simple instructions and make judgments on simple work-related decisions; she could respond to usual work situations and to changes in a routine work setting; and she could respond appropriately to co-workers, supervisors, and the public. She was unable to perform production rate work but could have an end-of-day production quota. She was limited to work environments with limited distractions caused by people walking by.

6.  The claimant had no past relevant work.

7.  The claimant was 53 years old, which is defined as an individual closely approaching advanced age, on the date last insured.

8.  The claimant had at least a high school education and was able to communicate in English.

9.  Transferability of job skills was not material because the claimant had no past

> relevant work.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could perform.

11. The claimant was not under a disability, as defined in the Act, from her alleged onset date to the date of the ALJ's decision.

On January 1, 2017, the Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

**II.     Facts**

Plaintiff, who was 53 years old on her date last insured, has a family history of Huntington's disease, which caused the death of her father and has affected her brother and numerous paternal relatives. Because of her fear of learning she had Huntington's disease, she delayed genetic testing to confirm her diagnosis, even after she started experiencing tremors and cognitive declines. After a period of decline, she visited a neurologist in November 2011 and underwent a battery of neuropsychological testing with a psychologist in February 2012. She reported problems related to memory, concentration, and confusion and told her doctors that she was having problems making decisions, remembering the right word, and following through with things. She stated she was easily distracted and got confused. Testing performed by Joseph Fink, Ph.D. indicated that, as of February 2012, her full scale IQ was 71, which falls in the borderline range of intellectual functioning. She

3

demonstrated severe impairment in the ability to maintain sustained attention, severe impairment in immediate memory with regard to the ability to acquire new information visually, and moderate to severe impairments in several other functions. Dr. Fink confirmed that the results were consistent with the early stages of Huntington's disease; Plaintiff eventually underwent the necessary genetic testing to confirm her diagnosis. A second battery of neuropsychological testing in October 2012 revealed that her conditioned had worsened in the intervening eight months.

While it is undisputed that Plaintiff has suffered even greater declines in functioning since that time, the sole question before the ALJ was whether or not Plaintiff was under a disability, as defined in the Act, as of the date she was last insured under the Disability Insurance Program, which was March 31, 2012.

## III. Standard of Review

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227

F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his or her analysis of the evidence in order to allow the reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

**III.     Analysis**

Plaintiff argues that the ALJ erred in evaluating Plaintiff's RFC because he did not properly

evaluate the opinion evidence, familial testimony, and Plaintiff's own statements. The Commissioner argues that the ALJ's decision is supported by substantial evidence.

"The RFC is an assessment of what work-related activities the claimant can perform despite her limitations." *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); *see also* 20 C.F.R. §§ 404.1545(a)(1); 416.1545(a)(1). In evaluating a claimant's RFC, an ALJ is expected to take into consideration all of the relevant evidence, including both medical and non-medical evidence. *See* 20 C.F.R. §§ 404.1545(a)(3); 416.945(a)(3). According to SSA regulations:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8p at *7. Although an ALJ is not required to discuss every piece of evidence, he must consider all of the evidence that is relevant to the disability determination and provide enough analysis in his decision to permit meaningful judicial review. *Clifford*, 227 F.3d at 870; *Young*, 362 F.3d at 1002. In other words, the ALJ must build an "accurate and logical bridge from the evidence to his conclusion." *Scott*, 297 F.3d at 595 (quoting *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002)).

The ALJ found that, as of her date last insured, Plaintiff was physically capable of light work, with a range of limitations imposed by her cognitive impairments. In formulating the mental portion

of that RFC assessment, the ALJ relied heavily on the hearing testimony of psychologist Larry Kravitz, who opined that Plaintiff was still capable working at a job requiring only simple, routine tasks, with no pace production quotas but allowing for end-of-day production quotas, as of her date last insured. Dr. Kravitz opined that Plaintiff's condition declined such that she was disabled as of her second round of neuropsychological testing, in October 2012. However, he also acknowledged that March 31, 2012, Plaintiff's date last insured, was "certainly an arguable date."

In assessing a mental RFC based on the hearing testimony of Dr. Kravitz, the ALJ rejected the testimony of Plaintiff's husband, who was closely acquainted with the duration and pace of his wife's decline. The ALJ stated that he did not find the testimony of Plaintiff's husband credible because Plaintiff's husband was "not an acceptable medical source" and "as a member of the claimant's household, he may be inclined to overstate the claimant's symptoms in an attempt to help the claimant obtain benefits." However, the ALJ is required to properly consider even familial evidence. *See* 20 C.F.R. § 404.1513(d)(4) ("In addition to evidence from the acceptable medical sources . . . we may also use evidence from other sources to show the severity of your impairment(s) and how it affects your ability to work. Other sources include . . . (4) Other non-medical sources (for example, spouses, parents and other caregivers, siblings, other relatives, friends, neighbors, and clergy."). Viewing all family testimony with great skepticism runs counter to Social Security Rulings 96-7p,[1] which lists examples of sources who "may provide information about the seven factors listed in the regulations and *may be especially helpful in establishing a longitudinal record*," (emphasis

---

[1] A superseding ruling, SSR 16-3p, applies to Social Security determinations made on or after March 28, 2016. On October 25, 2017, the Social Security Administration republished SSR 16-3p, amending it to indicate that courts reviewing Social Security disability claims should use the prior ruling for decisions based on administrative proceedings that took place before March 28, 2016. See SSR 16-3p at FN 27. *See* 82 FR 205, 49462 (Oct. 25, 2017) (explaining the correction). Because the ALJ's opinion in this case predates the applicable date of SSR 16-3p, the older ruling applies. The same regulations underlie both rulings.

added) and specifically includes "nonmedical sources such as family and friends." SSR 96-7p at *8. "Contrary to the ALJ's suggestion, nonmedical sources such as family and friends are not expected to have medical training or to be disinterested witnesses." *Macon v. Astrue*, No. 11 C 8140, 2012 WL 4854557, at *11, 2012 U.S. Dist. LEXIS 146223, at *31 (N.D. Ill. Oct. 11, 2012) (quoting *Guranovich v. Astrue*, No. 09 C 3167, 2011 WL 686358 at *19, 2011 U.S. Dist. LEXIS 15970, at *56 (N.D. Ill. Feb.15, 2011) (quotation marks and other citations omitted).

The Commissioner suggests that no limitation identified by Plaintiff's husband would have altered the outcome of the case. To the contrary, the familial testimony goes directly to the heart of the question in this matter, which is the duration and extent of Plaintiff's decline prior to March 31, 2012. The ALJ rejected the husband's written statement that Plaintiff's condition in 2013 was consistent with that in 2012, and ignored his hearing testimony entirely. At the hearing in May 2015, Plaintiff's husband testified that he had "seen a big, very big change in her in the last . . . five or six years. And we did wait to get a diagnosis because quite frankly, we probably didn't want to know." He explained that, although they suspected she had Huntington's disease like several of her relatives "[T]here's no cure for it, so we sort of hesitated. And then it started getting pretty bad." The testimony of Plaintiff's husband indicates that her impairments were increasing in severity long before the date she finally relented to seek neurological treatment in November 2011, which was several months before her date last insured. If the ALJ disbelieved the oral testimony of Plaintiff and her husband, he is obligated to explain why. Instead, his opinion made no mention of Plaintiff's husband's hearing testimony about the duration of her decline, leaving the Court unable to determine how he considered that evidence in deciding that Plaintiff was not disabled prior to her date last

insured.

Plaintiff also argues that the ALJ improperly evaluated Plaintiff's subjective symptom statements. The Commissioner argues that the ALJ's assessment of Plaintiff's statements is not patently wrong. An ALJ is not required to give full credit to every statement made by the claimant or to find a disability each time a claimant states he or she is unable to work. *See Rucker v. Chater*, 92 F.3d 492, 496 (7th Cir. 1996). However, Ruling 96-7p provides that a claimant's statements regarding symptoms or the effect of symptoms on his ability to work "may not be disregarded solely because they are not substantiated by objective evidence." SSR 96-7p at *6. An ALJ's credibility determination is entitled to substantial deference by a reviewing court and will not be overturned unless the claimant can show that the finding is "patently wrong." *Prochaska*, 454 F.3d at 738.

The ALJ summarized selected portions of Plaintiff's testimony, then found that her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." Following that is a summary of medical evidence on file. Nowhere does the ALJ explain which of Plaintiff's statements he found less-than-credible, or why. In addition, he omitted any discussion of several key portions of her testimony, particularly her testimony how her symptoms affected her ability to work during the relevant period. The ALJ supported his finding that Plaintiff could work past her date last insured in part by indicating that she "was looking for work in September 2012 and even continued working at her medical billing business until December 2012."

The ALJ's selective treatment of the facts surrounding Plaintiff's work history is concerning. First, attempting to work after the onset of disability does not necessarily mean that a person is not disabled. As the Seventh Circuit has noted, "even persons who *are* disabled sometimes cope with

9

their impairments and continue working long after they might have been entitled to benefits." *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012); *see also Pierce v. Colvin*, 739 F.3d 1046, 1051 (7th Cir. 2014) ("[A] claimant's dogged efforts to work beyond her physical capacity would seem to be highly relevant in deciding her credibility and determining whether she is trying to obtain government benefits by exaggerating her pain symptoms."); *Richards v. Astrue*, 370 F. App'x 727, 732 (7th Cir. 2010) ("A desperate person might force herself to work – or . . . certify that she is able to work – but that does not necessarily mean she is not disabled."); *Gentle v. Barnhart*, 430 F.3d 865, 867 (7th Cir. 2005) ("A person can be totally disabled for purposes of entitlement to social security benefits even if, because of an indulgent employer or circumstances of desperation, he is in fact working.").

Plaintiff testified that she had a home-based medical billing business which, at its peak, had seven clients. Though Plaintiff had the company for many years, records indicate that the company last generated income for Plaintiff in 2008. Plaintiff's work during the relevant period required no math because, staring about five years before her hearing (well before her date last insured), her husband took over the actual billing work. Nor did Plaintiff need to remember medical billing codes, since those were in the computer. At one point, the medical billing platform switched to a different system, and the person who attempted to train her on it "just couldn't get through" and told her she had "never had a person that just didn't understand it." Even when her work was reduced to phone contacts and data entry, Plaintiff made so many errors that she lost all but one of her clients, and then at the end of 2012 that final client fired her as well, after writing a letter to explain why. Discussing those facts, Plaintiff stated that she "really should have . . . filed for disability the year before." In light of this testimony, ALJ's statement that Plaintiff was "working" through the end of 2012 omits

more relevant information that it conveys.

With respect to her attempts to find other work, Plaintiff also testified that she could not pass the typing test for one job and was fired from another job on the first day because her memory problems made it difficult for her understand and retain what they were training her to do. The ALJ did not mention any of this testimony, leaving the Court unable to determine how he weighed it.

Under the circumstances, given that the testifying medical expert thought an earlier date "arguable" and given Plaintiff's apparent delay in seeking treatment due to her fear of learning she shared her family's fatal genetic disorder, it was particularly important for the ALJ to explain how he considered Plaintiff's testimony and that of her husband about the long-term nature of her decline. In those key areas, the ALJ has not sufficiently articulated his assessment to ensure the Court that he has considered all of the important evidence in his analysis of Plaintiff's RFC. *See Scott v. Barnhart,* 297 F.3d at 595. On remand, the ALJ should consider and explain what weight he gave to the testimony of Plaintiff and her husband about the duration of her decline and about her failed attempts at work.

## IV.   Conclusion

For the foregoing reasons, the Court hereby **GRANTS** the relief requested in Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [DE 16] and **REMANDS** this matter for further proceedings consistent with this opinion.

SO ORDERED this 27th day of April, 2018.

s/ John E. Martin  
MAGISTRATE JUDGE JOHN E. MARTIN  
UNITED STATES DISTRICT COURT

cc:    All counsel of record